IN THE U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:14-CV-541-H

**DONTE WAKEFIELD**                                                             **PLAINTIFF**

**V.**

**PEERLESS INDEMNITY**                                        **DEFENDANTS**
**INSURANCE COMPANY ET AL.**

---

**PEERLESS INDEMNITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR STAY OF DISCOVERY AND BIFURCATION OF CLAIMS**

---

The Defendant, Peerless Indemnity Insurance Company incorrectly referred to in the Complaint as Liberty Mutual Group, Inc. and Ohio Casualty Company[1] ("Peerless Indemnity"), for its Memorandum of Law in Support of Motion to Bifurcate Claims and Stay Discovery, states:

**I.   BACKGROUND FACTS AND ALLEGATIONS OF COMPLAINT**

This case arises from a motor vehicle accident which occurred on July 29, 2012 where the Plaintiff, Donte Wakefield, was a passenger in a vehicle driven by Melvorne Walters that collided with a vehicle driven by the tortfeasor, Elianor Lemour. The Plaintiff's liability claims against Lemour have been settled. Peerless Indemnity was the underwriting company which issued a commercial insurance policy which included commercial auto coverage to Walters Property Management, LLC that covered the vehicle at issue and which included underinsured coverage.

---

[1] Peerless Indemnity issued the applicable policy of insurance and neither Liberty Mutual nor Ohio Casualty issued a policy of insurance applicable to the subject motor vehicle accident and therefore Liberty Mutual and Ohio Casualty are incorrectly named as Defendants.

The Plaintiff, Donte Wakefield, has asserted claims against Liberty Mutual and Ohio Casualty for underinsured coverage (Count I), statutory bad faith (Count II), and for common law bad faith (Count III). A dispute arose between Plaintiff and Peerless Indemnity regarding the value of Plaintiff's underinsured claim. Peerless Indemnity has filed an Answer to the Complaint asserting certain defenses and denying liability with regard to the allegations made therein.

Pursuant to Local Rule 37.1 Peerless Indemnity requested counsel for Plaintiff to agree to bifurcate and for stay discovery and requested if Plaintiff would agree to the entry of an Agreed Order to bifurcate the coverage and tort claims and to stay discovery on the bad faith and other extra-contractual claims until the coverage issues were decided. Recent case law was provided to counsel for the Plaintiff from this Court following this approach of bifurcating and staying discovery. Counsel for Plaintiff would not agree to the stay of discovery on the extra-contractual and other tort claims and the parties are at an impasse on resolving this discovery issue. A copy of the correspondence between counsel for Peerless Indemnity and counsel for Plaintiff regarding this discovery issue is attached hereto as **Exhibit 1**.

## II. BIFURCATION OF CLAIMS IS APPROPRIATE

Federal Rule of Civil Procedure 42(b) provides when a court may bifurcate a matter into separate trials. A district court may order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize" … "of one or more separate issues, claims …." "The decision whether to try issues separately is within the sound discretion of the court." Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc., 76 F.3d 743, 747 (6th Cir. 1996), quoting, In Re Bendictin Litigation, 857 F.3d 290, 307 (6th Cir. 1988). While a federal court sitting in

diversity applies state substantive law, it nonetheless applies federal procedural law. Hanna v. Plumer, 380 U.S. 460, 465 (1965) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, (1938).

Federal District Courts in Kentucky frequently sever the trials for contract and bad faith and other extra-contractual claims. E.g., Jacs Family Steakhouse, LLC v. Ohio Cas. Ins. Co., No. 13-CV-00043-JHM (W.D. Ky. Oct. 31, 2013) (**Exhibit 2**); Brantley v. Safeco Ins. Co. of Am., 2011 WL 6012554 (W.D. Ky. Dec. 1, 2010) (**Exhibit 3**); Nationwide Mutual Fire Ins. Co. v. Jahic, 2013 WL 98059 (W.D. Ky. Jan. 7, 2013) (**Exhibit 4**); Gatewood v. Universal Underwriters Life Ins. Co., 2007 WL 496375 (W.D. Ky. Feb. 7, 2007) (**Exhibit 5**); Bruckner v. Sentinel Ins. Co. LTD, 2011 WL 589911 (E.D. Ky. Feb. 10, 2011) (**Exhibit 6**); Massachusetts Mut. Life v. Watson, 2013 WL 142431 (E.D. Ky. Jan. 11, 2013) (**Exhibit 7**); see also Davidson v. Am. Freightways, Inc., 25 S.W.94, 100 (Ky. 2000).

This Court addressed bifurcating claims and staying discovery of first party bad faith actions in Jacs Family Steakhouse, No. 13-CV-00043-JHM, wherein Plaintiffs alleged statutory and common-law bad faith claims involving an alleged breach of contract. Id. at p. 2. The Court stated "separate trials on the issue of liability under the contracts of insurance is appropriate in this action, so as to 'avoid the introduction of confusing and perhaps privileged evidence until absolutely necessary.'" Id. at p. 3 (citing Brantley, 2011 WL 6012554).

As Judge Russell recognized in Brantley, 2011 WL 6012554 *2, "first party bad faith claims are routinely separated from coverage issues" and the court recognized "the question of bifurcation centers on whether resolution of a single claim would be dispositive for the entire case. See also Smith v. Allstate Ins. Co., 403 F.3d 401, 407 (6th Cir. 2005) (bifurcation acceptable where bad faith claims depended on the application of coverage issues); In re Beverly Hills Fire Ltg., 695 F.2d 207, 216 (6th Cir. 1982) (highly relevant where single claim would be

3

dispositive); Bruckner, 2011 WL 589911 *2 (bifurcation acceptable where bad faith claims depended on success of coverage issues); Massachusetts Mut. Life, 2013 WL 142431 *2 (bifurcation of coverage claims from bad faith and Consumer Protection Act claim proper because separating insurance coverage from bad faith and consumer protection "serves to promote convenience, avoid prejudice and prevent juror confusion" and such cases "lend themselves to bifurcation because if the plaintiff cannot prevail on the coverage issue[s], the claim for bad faith [and other tort claims] fail." After all, "[u]nder Kentucky law, a bad faith claim requires showing that 'the insurer is obligated to pay the claim under the terms of the policy....'" Massachusetts Mut. Life, 2013 WL 142431 *2, quoting, Wittmer v. Jones, 864 S.W.2d 885, 890 (Ky. 1993).

In Wittmer, 864 S.W.2d at 890, the Kentucky Supreme Court determined bad faith claim requires the Plaintiff to prove the insurer had an obligation to pay, and further that the insurer lacked a reasonable basis for denying benefits as well as that the insurer knew it lacked a reasonable basis or acted with reckless disregard in denying benefits. See also Honican v. Stonebridge Life Ins. Co., 2005 WL 2614904 * at page 2 (E.D. Ky. 2005), a copy of which is attached hereto as **Exhibit 8**. "Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." Davidson, 25 S.W.3d at 100. Bifurcation serves the interest of judicial economy as if a jury found that there was no breach of contract, a trial on the bad faith claim would be unnecessary. See Honican, 2005 WL 2614904 *3; Hoskins v. Allstate Property & Casualty, 2006 WL 3193435 *2 (E.D. Ky. 2006), a copy attached as **Exhibit 9**), Jahic, 2013 WL 98059 *3.

Other courts have also held that bifurcation is "particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case." See Cook v. United Services

4

Automobile Assoc., 169 F.R.D. 359, 361 (D. Nev. 1996), citing O'Malley v. United States Fidelity and Guaranty Co., 776 F. 2d 494, 501 (5th Cir. 1985); see also Wright & Miller, Federal Practice and Procedure, Civil 2d § 2388 at page 426 (1994).  See also Smith, 403 F.3d at 407. "[W]hether the resolution of a single issue would be dispositive of an entire claim is highly relevant in determining the efficacy of bifurcation."  In re Beverly Hills Fire Litigation, 695 F.2d 207, 216 (6th Cir. 1982), citing, Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537, 542 (8th Cir. 1977).

Moreover, bifurcation is appropriate because it would avoid prejudice at the trial.  If all the claims were tried concurrently, the jury may be informed about any settlement discussions. As the United States District Court recognized in a first-party bad faith case involving UIM claims in Shearer v. Ohio Casualty Insurance Co. and American Fire and Casualty Group, 2012 WL 4338675 *2 (E.D. Ky. Sept. 20, 2012), a copy which is attached as (**Exhibit 10**), "trying the liability claims and the bad faith claims together would be prejudicial because it would unnecessarily interject the issue of bad faith into the primary dispute of liability, making discovery more difficult and complicating the issues at trial."  Accordingly, in Shearer Senior Judge Hood exercised his discretion in bifurcating the trial and staying discovery on the bad faith claims.

Bifurcation also serves the purpose of avoiding prejudice to the parties by eliminating cumbersome and unnecessary discovery and by reducing the time and money the parties will need to expend to litigate.  Further, bifurcation simplifies the issues and prevents confusion to the jury while at the same time there is no prejudice to the Plaintiff as Plaintiff will get the opportunity to litigate his extra-contractual claims if he succeeds on the underlying claims.  Id. see also Jahic, 2013 WL 9859 *3; Massachusetts Mutual Life, 2013 WL 142431 *1.

5

In <u>Hoskins</u>, 2006 WL 3193435 *2, the United States District Court for the Eastern District of Kentucky granted a motion for bifurcation and stay of discovery of the bad faith claims and cited several other courts which have examined bad faith bifurcation issues and upheld separate trials when prejudice may result. <u>See</u> **Exhibit 9**. As such, the trial of this matter should be bifurcated.

### III. STAY OF DISCOVERY IS APPROPRIATE

Discovery on Plaintiff's statutory and common law bad faith claims should be stayed pending the resolution of the underlying contractual claim. Allowing Plaintiff to conduct discovery on the extra-contractual claims would expose information in Peerless Indemnity's claims file that would otherwise be privileged. Allowing discovery on the bad faith claims may also result in needless litigation expense, as the extra-contractual claims cannot go forward if the Plaintiff does not prevail on the primary issue of liability.

In <u>Smith v. Allstate Ins. Co.</u>, 403 F.3d 401, 407 (6th Cir. 2002), the Sixth Circuit Court of Appeals recognized "that it is within a district court's discretion to stay discovery on a bad faith claim in a first-party contract dispute brought by an insured against its insurer because "the merits of the bad faith claim depend [ ] on the merits of the underlying contact claim." <u>See also</u> <u>Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund</u>, 349 F.3d 300, 304 (6th Cir. 2003).

This Court also addressed the issue of staying discovery in first party bad faith claims in <u>Jacs Family Steakhouse</u>, No. 13-CV-00043-JHM, which also involved a first-party insurance contract dispute in which this Court stated Plaintiff must prevail before being entitled to proceed with its extra-contractual casuses of action. "In such cases, 'staying discovery of the bad-faith claims pending resolution of the underlying contractual dispute would both prevent prejudice and further judicial economy.'" <u>Id</u>. at p. 4, citing <u>Jahic</u>, 2013 WL 98059 *3.

6

Other jurisdictions have also addressed the issue of whether or not a claims file is discoverable in a bad faith suit while the underlying case is being litigated. For example, in Bartlett v. John Hancock Mutual Life Insurance Co., 538 A.2d 997 (R.I. 1988), the Rhode Island Supreme Court held that in a first party claim for coverage where the insured had also included a bad faith claim, the insured could not discover the claims file of the insurer while any coverage issues remained to be resolved. The court specifically held that such access "would irreparably prejudice the insurer's ability to defend itself on the contract." Id., at 999-1000. (emphasis added). This is the same reasoning which undeniably motivated the Supreme Court of Kentucky to bifurcate the coverage and bad faith claims in Wittmer, 864 S.W.2d 885. See also, In re Bergerson v. National Security Corp., 112 F.R.D. 692, 697 (D. Mont. 1986); Brantley, 2011 WL 6012554 *2; Jahic, 2013 WL 980509 *3; Bruckner, 2011 WL 589911 *2.

In addition, the Rhode Island Supreme Court in Bartlett, 538 A.2d 997, reasoned that there can be no cause of action for bad faith against an insurer until the insured first establishes entitlement to the policy proceeds. Therefore, the Court justly reasoned that a Plaintiff cannot obtain discovery of an insurer's claims file by simply bringing a bad faith claim concurrently with a coverage claim. Id. at 1000. Such should also be the case here. Finally, the Court in Bartlett, 538 A.2d 997, recognized that, in a first party coverage case, statements taken by a claims agent truly are taken in anticipation of litigation, and thus, entitled to qualified privilege under Civil Rule 26. The qualified privilege protects defendant-insurers from having their open and frank business communications and legitimate decisions chilled for fear of discovery. See, State ex. rel. U.S. Fidelity and Gear Co. v. Montana Second Judicial Dist. Court, 783 P.2d 911, 915-16 (Mont. 1989) (discussing insurers' need for candid evaluations and communications regarding a claim). That rationale also holds true here.

7

As this Court recognized in Shearer, 2012 WL 4338675, a copy which is attached as **Exhibit 10**, "it is well within a district court's discretion in a first-party insurance contract dispute to stay discovery on a bad faith claim or [other extra-contractual claim] 'since the merits of the bad faith claim [or other extra-contractual claim] depend [.] on the merits of the underlying claim. Id. at *2 (citing, Smith, 403 F.3d at 407); see also Brantley, 2011 WL 6012554 at *page 3, a copy which is attached as **Exhibit 3** (reaching similar position that stay of discovery was proper and that a stay of the extra-contractual claims was proper while recognizing "broad-based discovery of the bad faith claims" would be highly prejudicial); Jahic, 2013 WL 98059 *3, **Exhibit 4**.

The facts of this case are somewhat similar to those in Shearer, 2012 WL 4338675 (**Exhibit 10**), which involved a motor vehicle accident and claims against Ohio Casualty, the underinsured carrier. The United States District Court for the Eastern District of Kentucky found bifurcation and a stay of discovery on the bad faith claims to be appropriate and promote judicial economy by avoiding complicated privilege issues involved with discovery. The Court found that as the claim involved UIM benefits, "exposure to the plaintiff on the underinsured motorist claim is implicated only to the extent that the tortfeasor's liability coverage is unsufficient.'"

This case is also like both Hoskins, 2006 WL 3193435 (**Exhibit** ); and Bruckner, 2011 WL 589911 (E.D. Ky. February 10, 2011) (**Exhibit 6**), because a stay of discovery on the bad faith claims is appropriate under the circumstances as unless Plaintiff prevails on the coverage claims there would be no basis for the Plaintiff to proceed in the remainder of this case and if the carrier were successful there would be no need to engage in the inevitable battle concerning production of its investigatory files and that the basis for the bad faith claims should be abated until the necessity for such discovery is certain. The Court in Hoskins further noted at page 3

8

that judicial economy "does not dictate that discovery in both these issues proceed simultaneously." This Court also found that in order to avoid any prejudice discovery regarding Plaintiff's bad faith claims should be stayed until a resolution on the "underlying contract issue has been resolved." Id.

Similarly, in Bruckner, 2011 WL 589911 (**Exhibit 6**), Chief Judge Jennifer Coffman considered a lawsuit that arose out of property damage claims submitted by the Plaintiff to her insurer after she had sustained water damage to her property under a homeowner's insurance policy where her insurer had denied the claim. In Bruckner, Plaintiff's claims concerned a breach of contract, bad faith allegations and a declaration of rights. Judge Coffman noted that the Plaintiff's bad faith claim depended on her ability to succeed on her breach of contract claim and that bifurcation would serve the best interests of judicial economy. The Court further found that discovery regarding the bad faith claims should be stayed until a resolution of the coverage claim. The Court recognized and cited other authority noting that presenting "a contract issue and bad faith issue to the jury 'may unfairly bleed the evidence for one into the evidence for the other.'" Id. see also Sanders v. Motorists Mut. Ins. Co., 2008 WL 4534089, at *2-3 (E.D. Ky. Oct. 7, 2008) (**Exhibit 11**).

First party insurance claims files may contain privileged information which is not discoverable. Federal Rule of Civil Procedure 26 provides protection from discovery of information prepared in anticipation of litigation by or on behalf of a party, or that party's representative (including the party's attorney, insurer, consultant, agent, etc.). A Plaintiff should not obtain an unfair advantage in preparing his case on the underlying issues simply because he has also alleged bad faith claims. Bartlett, 538 A.2d 999-1000. In Bartlett, the Rhode Island Supreme Court found just because a bad faith claim has been asserted in the first party context

9

does not make the claims file of the insurer discoverable while any coverage issues remain to be resolved. In Bartlett, the Court specifically held that such access "would irreparably prejudice the insurer's ability to defend itself on the contract." Id. at 999-1000. The Bartlett Court justly reasoned that a plaintiff cannot obtain at discovery an insurer's claims fail simply by bringing a bad faith claim concurrently with a coverage claim.

The scope of discovery regarding the coverage issues should not be expanded merely because the Plaintiff has also alleged bad faith claims; especially when the resulting irreparable prejudice is avoidable through bifurcation and a stay of discovery on the bad faith claims. See also Hardy Oil Co., Inc. v. Nationwide Agribusiness Ins. Co., 2011 WL 6056599 (E.D. Dec. 10, 2011) (**Exhibit 12**) (bifurcation and stay of discovery is appropriate in coverage and first party bad faith claim action as bifurcation serves judicial economy and avoids prejudice while narrowing claims for economical discovery.). Prejudicial use of the discovery process can be avoided by staying discovery as to any bad faith or related claims until the underlying coverage claim is resolved. See Hoskins, 2006 WL 3193435 at *2 (**Exhibit 9**). By contrast, any delay or inconvenience caused to the Plaintiff by bifurcating discovery would be minimal. The Plaintiff is not foreclosed forever from obtaining the information he is seeking. The Plaintiff must, however, prevail on his coverage claim first. If he does prevail, then he can pursue this additional discovery at that time.

Counsel for Plaintiff's position in this case is that discovery should not be stayed and evidently that the trial of the case can proceed in front of the same jury but with bifurcation of the proceeding. This position would needlessly drive up costs of discovery to the parties and involve protracted discovery. Significantly, this position would not serve judicial economy and the claims would not be narrowed for economical discovery. Instead, the parties would be

required to engage in wasteful protracted discovery and preparation for a lengthy trial.  Further, such a proceeding would be highly prejudicial to the Defendants.  Buckner, 2011 WL 589911 at *2 **(Exhibit 6)**; Sanders, 2008 WL 453408 at *2-3 **(Exhibit 11)**;  Brantley, 2011 WL 6012554 *3 **(Exhibit 3)**.  ("Defendants may be prejudiced if [joint discovery] occurs before it is clear whether the plaintiff can even proceed with a bad faith claim by establishing a breach of contract.")  Further, as recognized by this Court in Jahic, 2013 WL 98059 *2 **(Exhibit 4)**, "[w]here the bad-faith claim depends on resolution of the underlying contractual dispute regarding the policy of insurance, it is reasonable for a court to resolve the coverage question before allowing the bad-faith claim to proceed."

In the subject case, the coverage issues and Plaintiff's alleged bad faith and other extra-contractual and tort claims are distinct.  The facts surrounding the motor vehicle accident and Plaintiff's alleged injuries and the cause thereof are distinct from post-claim conduct of Peerless Indemnity employees, agents and adjusters.  Allowing broad based separate discovery would be prejudicial and threaten judicial economy and cause unnecessary delay. The coverage claims and extra-contractual tort claims are not inextricably intertwined.  See Jacs Family Steakhouse, No. 13-CV-00043-JHM, at p. 5; Hoskins, 2006 WL 3193435; Bruckner, 2011 WL 589911; and Massachusetts Mut. Life, 2013 WL 142431.  Further, Plaintiff's counsel is a necessary witness with regard to the bad faith claims as he initially refused to allow Plaintiff to sign a medical release to obtain her prior accident records and would not allow pre-litigation to fully investigate Plaintiff's pre-accident medical history.  This issue involving Plaintiff's lead counsel complicates the bad faith claims and would require protracted discovery issues if discovery on the bad faith claims was not stayed pending a resolution of the coverage issues.  Plaintiff's lead counsel likely

11

would need to be disqualified for acting as counsel if discovery on the bad faith claims is not stayed.

This Court should enter the tendered Order staying discovery on Plaintiff's statutory and common law bad faith claims pending the outcome of the coverage claims, and granting bifurcation of the extra-contractual claims.

## CONCLUSION

Plaintiff's bad faith claims are in no way diminished or impaired by bifurcation and stay of discovery. Rather, those claims are merely delayed until further proceedings on the bad faith claim are warranted and necessary. Logic and economy dictate that the underlying liability case should be fairly and fully resolved before the parties launch into the potential distinct issue of insurance bad faith. Plaintiff has no cause of action against Peerless Indemnity for an alleged bad faith or other extra-contractual claim for failure to settle if Plaintiff loses the underlying contract claim. To require simultaneous discovery on the bad faith allegations and other extra-contractual claims under these circumstances results in needless litigation expenses and use of valuable judicial resources. Further, engaging in a bifurcated trial before the same jury as Plaintiff's counsel advocates would likely result in needless litigation expenses and be highly prejudicial to Defendants. Accordingly, Peerless Indemnity respectfully requests this Court to stay all discovery on the bad faith claims and other extra-contractual claims pending a resolution of the breach of contract claims.

Respectfully submitted,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

/s/ Donald L. Miller, II
Donald L. Miller, II, Esq.
John F. Carroll, Esq.
9300 Shelbyville Road, Suite 400
Louisville, KY  40222
Telephone: 502.423.6390
Facsimile:  502.423.6391
dmiller@qpwblaw.com
jcarroll@qpwblaw.com
**ATTORNEYS FOR DEFENDANT PEERLESS INDEMNITY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of this Court on this 22nd day of September, 2014, and will be served electronically to designated CM/ECF participants through the Court's electronic filing system, and served upon the following non-CM/ECF parties:

Nathan D. Williams
Danielle A. Reesor
Bahe Cook Cantley & Nefzger PLC
312 South Fourth Street, 6th Floor
Louisville, KY 40202
nathan@bccjlaw.com
danielle@bccnlaw.com
*Counsel for Plaintiff*

*/s/Donald L. Miller, II*
Donald L. Miller, II